---

(No. 13443.—Reversed and remanded.)
ALFRED C. HOY, Appellee, *vs.* A. A. KUHN, County Clerk,
*et al.*—(THE VILLAGE OF GLEN ELLYN, Appellant.)

*Opinion filed October 23, 1920—Rehearing denied Dec. 10, 1920.*

1. TAXES—*power of court of equity to enjoin collection of tax.*
Equity cannot enjoin a tax except where it is not authorized by
law, or is assessed upon property not subject to taxation, or where
the property has been fraudulently assessed at too high a rate.

2. SAME—*tax will not be enjoined for mere irregularity.* A tax
levied by public authorities having power to levy it will not be en-
joined for a mere irregularity or informality in the exercise of the
power but the persons affected will be left to their legal remedy.

3. SAME—*decision of village board as to sufficiency of petition
for an additional appropriation is prima facie correct—burden of
proof.* The decision of a village board of trustees that there are
a sufficient number of signers to a petition for an appropriation
in addition to the annual appropriation may be attacked in a suit
to enjoin the collection of the tax but is *prima facie* correct, and
the burden is on the complainant to prove that the petition was not
signed by a majority of the legal voters of the village.

295—3

4. SAME—*taxing authorities have discretion as to amount and purpose of money to be raised.* The levy of a tax greatly exceeding the amount necessary for the purpose of the levy and intended to be used for some other purpose or for the unnecessary accumulation of money in the treasury is illegal, but the taxing authorities have a reasonable discretion in determining the amount and purpose of the appropriation, and it is only in cases of a clear abuse of this discretionary power that the courts will interfere.

5. SAME—*when evidence does not show that appropriation was unnecessarily increased.* Where the assessed value of property in a village as reported by the county clerk to the village clerk is not sufficient to sustain the annual appropriation made by the village board and the amount is accordingly reduced, but subsequently the board of review ascertains that the value of the personal property of a certain estate is of such an amount that the assessed valuation of property in the village will be doubled, the board of trustees, upon the proper petition of a majority of the legal voters, may increase the appropriation to meet the public needs.

CARTWRIGHT, C. J., and FARMER and STONE, JJ., dissenting.

APPEAL from the Circuit Court of DuPage county; the Hon. SAMUEL C. STOUGH, Judge, presiding.

ROBERT J. SCOTT, and JOHN PRENDERGAST, for appellant.

CARNAHAN & SLUSSER, and GEORGE W. THOMA, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

This is an appeal by the village of Glen Ellyn from a decree of the circuit court of DuPage county restraining the collection of all the tax for the year 1919 levied by the village against the estate of William P. Cowan, deceased, in excess of $3272.75.

The board of trustees of the village passed an annual appropriation bill on June 9, 1919, during the first quarter of the fiscal year, which began on April 15, appropriating $8638.64 for municipal purposes. On August 25 a petition purporting to have been signed by a majority of

the legal voters of the village was presented to the trustees praying that they make certain additional appropriations, and on the same day the trustees passed another ordinance making appropriations of the same amounts and for the same purposes as the previous ordinance. Afterward, on September 8, 1919, the trustees passed an ordinance levying the whole amount appropriated by both ordinances and the further amount of $2150, which the board of trustees had appropriated for the purpose of oiling the streets by an ordinance passed July 15, 1919, purporting to amend the annual appropriation bill of June 9.

The grounds for relief alleged in the bill were, (1) that the petition was not signed by a majority of the legal voters of the village; (2) that all the items in the additional appropriation ordinance were the same as those in the first and were all indefinite and not specific enough except the library tax and the tax for the health department; (3) that the levy ordinance was not published; (4) that no emergency had arisen after the passage of the first ordinance requiring additional appropriations; that the amounts first appropriated were ample and sufficient and that the increasing of them was unreasonable and unjust; (5) that the second appropriation ordinance was passed for the sole purpose of subjecting the estate of William P. Cowan to an excessive, oppressive and fraudulent tax.

The decree found that the petition was not signed by a majority of the legal voters of the village, and that all the appropriations, except those in the ordinance of June 9, were excessive, oppressive, fraudulent and void, and enjoined the collection of the tax levied against the estate of William P. Cowan in excess of $3272.75.

A court of equity cannot enjoin the collection of a tax except where the tax is not authorized by law or is assessed upon property not subject to taxation or where the property has been fraudulently assessed at too high a rate. (*Cook County* v. *Chicago, Burlington and Quincy Railroad*

*Co.* 35 Ill. 460; *Coxe Bros. & Co.* v. *Salomon,* 188 id. 571.)
A tax levied by public authorities having power to levy it
will not be enjoined for a mere irregularity or informality
in the exercise of the power but the persons affected will
be left to their legal remedy or defense. *Merritt* v. *Farriss,* 22 Ill. 303; *Gray* v. *Board of School Inspectors,* 231
id. 63.

By section 2 of article 7 of chapter 24 of the Revised
Statutes the board of trustees was required to pass an
annual appropriation bill within the first quarter of each
fiscal year, appropriating such sums of money as might be
deemed necessary to defray all the necessary expenses and
liabilities of the corporation, specifying the objects and purposes for which such appropriations were made and the
amount appropriated for each object or purpose. It was
further provided that no further appropriation should be
made at any other time within the fiscal year unless the
proposition to make such appropriation had been first sanctioned by a majority of the legal voters of the village,
either by a petition signed by them or at a general or special election duly called therefor. No election was held or
called, and the board of trustees was therefore without authority to make the additional appropriations or levy the
additional tax except upon the petition of a majority of the
legal voters of the village. A petition was presented to the
board of trustees asking them to make the additional appropriations, and it was recited in the ordinance that the
petition was signed by a majority of the legal voters of
the village. If the petition was signed by such majority
the board of trustees had the power to make the additional
appropriations. The board's decision of the preliminary
question of the sufficiency of the petition may be attacked
but it is *prima facie* correct, and the burden was on the
appellee to prove that the petition was not signed by a
majority of the legal voters of the village. (*People* v. *Ellis,* 253 Ill. 369.) The evidence introduced on this ques-

tion shows that 1001 votes were cast at the village election in April, 1919; that 591 legal voters signed the petition, 212 of whom did not vote at the spring election, and that 93 wives or husbands of legal voters who signed the petition did not vote. Adding to the number of votes actually cast the 212 and the 93 who did not vote, the appellee argues that the number of voters is shown to be 1306, of which number 591 is less than half. This argument is based upon the hypothesis that all of the 1001 who voted at the election in April continued to be voters August 25. There is no evidence of this fact, and the number of voters may have been reduced by death or removals to such an extent that 591 would constitute a majority. The registers of votes made on October 15 and October 29, 1918, of the second and fifth election precincts of the town of Milton, which included the village, as well as the poll-books of the election in those precincts on November 5, 1918, were also introduced in evidence to show that the number of voters in the village exceeded 1306, but the evidence was as ineffectual as that of the poll-books of the spring election for the same reason. The proof did not overcome the finding of the board of trustees that the petition was signed by a majority of the legal voters of the village.

The appellee contends that the amounts appropriated by the first appropriation ordinance were sufficient to defray the items mentioned; that the increasing of such amounts in the second appropriation ordinance was unreasonable and unjust and not based upon the necessities or requirements of the village, and that the second ordinance was passed for the sole purpose of subjecting the assets of the estate of William P. Cowan to an excessive and too high rate of taxation. If there may be cases in which allegations of this character may be made the ground for enjoining the collection of a tax the present is not such a case. When the first appropriation ordinance was passed the village clerk had been notified by the county clerk that the assessed

value of property within the village was about $600,000. On August 21, 1919, the board of review having ascertained the value of the personal property of the estate of William P. Cowan to be $1,325,000, caused it to be assessed at one-half of that amount in the village of Glen Ellyn, where the administrator, the appellee, lived, thus doubling the amount of taxable property in the village. Thereupon the petition for an increased appropriation was circulated and signed and the ordinance passed. While the levy of a tax greatly exceeding the amount necessary for the purpose of the levy and intended to be used for some other purpose or for the unnecessary accumulation of money in the treasury is illegal, yet the taxing authorities have a reasonable discretion in determining the amount and purpose for which money shall be raised by taxation, and it is only in cases of a clear abuse of this discretionary power that the courts will interfere. (*People* v. *Hassler,* 262 Ill. 133; *People* v. *Illinois Central Railroad Co.* 266 id. 126; *People* v. *Illinois Central Railroad Co.* id. 636.) There is no evidence that the increased appropriations were not based upon the needs of the village or that they were unnecessary or unjust, or that the ordinance was passed with any fraudulent purpose or for the purpose of subjecting the property of the estate of William P. Cowan to an excessive rate of taxation. On the contrary, the evidence indicates that in view of the amount of the assessed valuation of property in the village the board of trustees had reduced the appropriations in the first ordinance to an amount which met the bare necessities of the purposes for which the appropriations were made but which was insufficient to meet fully the reasonable requirements for those purposes. Thereupon, when the assessed valuation was unexpectedly doubled and the board of trustees by virtue of the petition, under the statute, was clothed with power to increase the appropriations made so as to meet more adequately the public needs, the question of making an additional appropriation and the amounts and

purposes of such appropriation was committed to the discretion and judgment of the board of trustees. This discretion cannot be interfered with by the court unless there is a clear abuse of power, and none is shown.

The decree enjoined the collection of the tax for oiling the streets under the ordinance of July 15, 1919. Neither this ordinance nor the tax is mentioned in the bill, which is confined by its allegations to the appropriation ordinances of June 9 and August 25. There was no basis in the pleadings for the decree in respect to this tax.

The decree of the circuit court is reversed and the cause is remanded, with directions to dismiss the bill.

*Reversed and remanded, with directions.*

CARTWRIGHT, C. J., and FARMER and STONE, JJ., dissenting:

When the validity of the ordinance was disputed in this direct proceeding to prevent its enforcement, the finding of the village trustees that the petition was signed by a majority of the legal voters of the village was *prima facie* evidence of the fact in the sense, and only in the sense, that it would be regarded as correct in the absence of all evidence to the contrary. The complainant proved by uncontradicted evidence that there were about 1300 legal voters in the village in April previous to the presentation of the petition in August. The settled rule is, that when a state of facts is once proved to exist it will be presumed to continue in the absence of evidence that it has been changed. (*Harding* v. *Hawkins,* 141 Ill. 572; *St. Louis, Alton and Terre Haute Railroad Co.* v. *Eggmann,* 161 id. 155.) The rule is uniform as to all relations and conditions and has been applied wherever residence was involved. It was decided in *Rixford* v. *Miller,* 49 Vt. 319, *State* v. *Jackson,* 79 id. 504, *Ferguson* v. *Wright,* 113 N. C. 537, and *Nixon* v. *Palmer,* 10 Barb. 175, that a residence once established is presumed to continue in the same place and that

the burden rests on the opposite party to show a change, and in some of these cases the presumption was held to continue for several years, or indefinitely, unless the contrary was proved. The rule is of daily application in the courts with respect to affidavits of non-residence for service by publication and on the trial and hearing of causes, where no party is ever called upon to prove that a residence once established has not changed. The complainant assumed the burden of proving that 591 was less than a majority of legal voters residing in the village and sustaining the burden by proof. To hold that he was obliged to prove that the number of voters had not been reduced by death or removals within the four months before the presentation of the petition is contrary to the law.