IRENE V. FRASER v. VERMILLION MINING COMPANY.
LAURA A. DAY v. CRETE MINING COMPANY.
LAURA A. DAY v. INLAND STEEL COMPANY.
H. B. FRYBERGER v. INLAND STEEL COMPANY.[1]

August 3, 1928.

Nos. 26,838, 26,839, 26,840, 26,941.

**Lessees of iron ore lands bound to pay to lessors the tax on royalties levied by 1923 act.**

1. Following Marble v. Oliver I. Min. Co. 172 Minn. 263, 215 N. W. 71, and Fryberger v. Inland Steel Co. 174 Minn. 139, 218 N. W. 553, the leases here involved obligated the lessees to pay the tax imposed by L. 1923, c. 226.

**Title of act does not violate the constitution.**

2. The act as construed in the decisions cited is properly entitled, and does not offend art. 4, § 27, of the state constitution.

**The tax is not unconstitutional.**

3. So construed and applied the tax imposed does not violate the state constitution, which provides that "taxes shall be uniform upon the same class of subjects" (art. 9, § 1) nor the fourteenth amendment of the federal constitution.

[1] Reported in 221 N. W. 13.

Licenses, 37 C. J. p. 201 n. 40.
Mines and Minerals, 40 C. J. p. 1016 n. 74.
Statutes, 36 Cyc. p. 1026 n. 17; p. 1044 n. 1.

See 25 R. C. L. 834; 4 R. C. L. Supp. 1604; 5 R. C. L. Supp. 1348; 6 R. C. L. Supp. 1486.

The defendants, Vermillion Mining Company (26,839), Crete Mining Company (26,840), and Inland Steel Company (Day case, 26,838; Fryberger case, 26,941), severally appealed from judgments of the district court for St. Louis county, Kenny, J. entered in favor of the respective plaintiffs upon orders sustaining demurrers to their answers. Affirmed.

*Abbott, MacPherran, Dancer, Gilbert & Doan, J. B. Putnam, Clarence B. Randall* and *Andrews & Belden,* for appellants.

*A. L. Agatin,* for respondent Fraser.

*Shaw, Safford, Putnam & Shaw,* for respondent Day.

*Fryberger, Fulton & Boyle* and *Harvey Hoshour,* for respondent Fryberger.

*G. A. Youngquist,* Attorney General, and *Patrick J. Ryan* filed a brief in behalf of the state of Minnesota, amicus curiae.

HOLT, J.

The appeal is from judgments entered in favor of the several plaintiffs, lessors of iron ore lands, against the several defendants, lessees, for the amount of the so-called royalty tax paid by the lessors, which tax the lessees had covenanted to pay. The judgments were entered upon orders sustaining demurrers to the answers of the lessees.

The covenants in the several leases are substantially the same as in the cases of Marble v. Oliver I. Min. Co. 172 Minn. 263, 215 N. W. 71, and Fryberger v. Inland Steel Co. 174 Minn. 139, 218 N. W. 553, which were construed as obligating the lessees to pay the tax. In those cases the orders sustaining the demurrers to the complaints of the lessors were reversed. In the instant cases, instead of demurring, the lessees pleaded certain facts in respect to iron ore lands,

the different kinds of mining leases covering the same, the minimum royalties contained in some, and other well known facts pertaining to iron ore lands and the mining thereof, together with averments in respect to practical construction of the tax covenants of mining leases. The pleading of those facts does not, in our opinion, place the lessees in a more favorable position than if not pleaded, for they are so well known that the court was required to take notice thereof in the Marble and Fryberger cases. And, as we understand it, the facts now pleaded were substantially conceded and stipulated in Lake Superior Cons. I. Mines v. Lord (second Lord case) 271 U. S. 577, 46 S. Ct. 627, 70 L. ed. 1093. Adhering to the Marble case, we hold that the covenants of the leases here involved obligate the lessees to pay the royalty tax.

In this appeal defendants advance two new propositions, viz: That the title of L. 1923, p. 258, c. 226, does not cover the taxation of interests or estates in realty; and, if it does, the classification is arbitrary and does not operate uniformly on all within the class, thus offending both the state and federal constitutions.

Art. 4, § 27, of our constitution provides:

"No law shall embrace more than one subject, which shall be expressed in its title."

The title to L. 1923, p. 258, c. 226, is:

"An act providing for the levy and collection of a tax on royalty received by the owner of any right, title or interest in land situate in this state for permission to explore, mine, take out and remove ore from the same."

Under our interpretation of this law, that it imposes a tax upon the right, title and interest of the owner of iron ore land who, for a consideration, has given to another permission to explore, mine and remove the ore, we do not see any force in the claim that the title does not cover the tax. The law does not embrace more than one matter, viz. the taxation of such an owner's interest in the land in so far as it relates to the ore in the course of removal, the amount of the tax being measured by a percentage of the consideration or royalty received.

It is very vigorously contended that even though there be no constitutional objection to the title and scope of L. 1923, p. 258, c. 226, as above construed, such construction necessarily renders the law unconstitutional as contravening art. 1, § 7, of the state constitution and the fourteenth amendment of the federal constitution in that, construed as a tax on interests in land, or in *rem*, it applies to a portion of the ore lands only and is discriminatory. Classification for the purposes of taxation is permissible under art. 9, § 1, of our constitution, which provides that "taxes shall be uniform upon the same class of subjects." Mutual Benefit Life Ins. Co. v. County of Martin, 104 Minn. 179, 116 N. W. 572; State ex rel. St. Paul City Ry. Co. v. Minnesota Tax Comm. 128 Minn. 384, 150 N. W. 1087; State v. Minnesota F. Mut. Ins. Co. 145 Minn. 231, 176 N. W. 756; Dohs v. Holm, 152 Minn. 529, 189 N. W. 418. The interests of an owner of iron ore in place, apart from the land, may be well placed in a different class for taxing purposes from that of an owner where mining is in progress and the interest in the ore is being depleted. But it is said the owner who conducts his own mining pays no royalty tax, whereas from an adjoining owner, who for a consideration has given another permission to remove the ore, the tax is exacted. The former however must pay an occupation tax, while the latter may deduct the royalty paid from the occupation tax. The state by the occupation tax (L. 1921, p. 274, c. 223) complemented by the royalty tax, seeks to reach and tax the interest in the land in so far as it relates to the ore which is being mined and as such forever lost as a subject of real estate taxation. The shifting of the burden of the tax from lessor to lessee is a matter of contract between the two and has no bearing upon the validity of the law imposing the tax.

Since the tax is measured by the amounts of the stipulated yearly consideration paid for the permission to mine, it is true that equality may not always result. Some leases run as low as 12½ cents per ton mined and others as high as $1.25 per ton. No doubt the uncertainty of the mining value of the ore and of varying estimates of the mining cost at the time the lease is made determine the

royalty or consideration. Other factors enter, such as the probable future market of the ore as well as its market value at the time of the lease. But similar variations affect all sorts of property and the taxation thereof. We may take as an example the operation of the gross earnings tax, the validity of which is so well established that no authorities need be cited. It is a tax imposed on the property of the owner in the form of a lieu tax. 6 Dunnell, Minn. Dig. (2 ed.) § 9543; Cudahy Packing Co. v. Minnesota, 246 U. S. 450, 38 S. Ct. 373, 62 L. ed. 827. It is common knowledge that the tax paid by one of the railroads carrying the iron ore from the mines in this state when compared with the value of its property is many times greater than the tax paid by the ordinary railroad when compared to the value of the latter's property.

Mining leases usually provide for a minimum royalty to be paid whether mining is done or not, and some contain provisions, not in others, that the minimum royalty thus paid shall be credited upon ore subsequently removed. The form of the permission under which iron ore is being removed should not have much bearing upon the validity of the law laying a tax upon the interest of the one who grants the permission. The law as construed in the Marble and the Lord cases affords, in our opinion, no valid ground for claiming it to be an arbitrary and discriminatory classification of property for taxation purposes. In Heisler v. Thomas Colliery Co. 260 U. S. 245, 43 S. Ct. 83, 67 L. ed. 237, the court held a tax upon anthracite coal mined, but excepting bituminous therefrom, a classification not in contravention of the fourteenth amendment to the federal constitution.

The judgments are affirmed.

HILTON, J. took no part.