## STATE v. EDITH OLIVER REA AND OTHERS.[1]

August 4, 1933.

Nos. 29,014, 29,015.

[1]Reported in 250 N. W. 41.

A. L. Agatin, for appellant Henry O. Rea.

Mitchell, Gillette & Carmichael, for appellant Vermillion Mining Company.

Henry N. Benson, Attorney General, and Charles E. Phillips, Deputy Attorney General, for the state.

HOLT, Justice.

The defendants Henry O. Rea and the Vermillion Mining Company, a lessee of Edith Oliver Rea, appeal from the judgment enforcing the royalty tax for the royalty received by defendant Edith Oliver Rea during the year 1923 for permission to explore and mine iron ore upon her fractional interest in a tract of land in St. Louis county, she having on December 19, 1923, conveyed all her right, title, and interest in such land to defendant Henry O. Rea. Defendant Edith Oliver Rea did not answer or appear in the action.

The short, admitted facts are: During 1923 defendant Edith Oliver Rea owned an undivided fractional interest in a tract of iron ore land in the county stated, from which she received $189,136.31 royalties for the permission given by her to remove iron ore therefrom during the year 1923. On December 19, 1923, she sold and conveyed all her interest in said tract of land to defendant Henry O. Rea, who had no notice or knowledge of the existence of the tax, unless the law imputes it to him. On January 29, 1924, Edith Oliver Rea filed a report with the Minnesota tax commission of the receipt of the royalty as required by 1 Mason Minn. St. 1927, § 2392-3 (L. 1923, p. 258, c. 226, § 3). On March 17, 1924, the tax commission, pursuant to § 2392-5, determined that $11,348.17 was due from Edith Oliver Rea as tax for the royalties so reported, and the next day issued a certificate for that amount of tax due from her and filed it with the state auditor and a duplicate with the state treasurer. The state auditor on June 10, 1924, drew a draft on Edith Oliver Rea for the amount of the tax and placed it in the hands of the state treasurer to collect. It was not paid and was

turned over to the attorney general for collection pursuant to § 2392-10, and this action was brought, resulting in the judgment stated. The assignments of error challenge the conclusion of law directing the right, title, and interest in the land mentioned, conveyed to appellant Henry O. Rea by Edith Oliver Rea, to be sold to satisfy the tax and penalties.

It was held in Marble v. Oliver I. Min. Co. 172 Minn. 263, 265, 215 N. W. 71, that the royalty tax was not a personal tax against the recipient of the royalty, but "a tax on the right, title and interest in ore lands of the owner thereof who has granted another the right to mine the ore for a stipulated consideration." This view of the tax was sustained in Lake Superior C. I. Mines v. Lord, 271 U. S. 577, 46 S. Ct. 627, 70 L. ed. 1093. And the state argues that, since the tax is upon the royalty recipient's interest in land, it attaches to the land and is enforceable *in rem* against the land out of which it arises regardless of change in the ownership thereof the same as taxes against lands generally. But realty taxes, as ordinarily imposed, are assessed and levied against the land by description directly. When so done under the pertinent statutes, no change of ownership affects or interferes with the right of the state to enforce the tax against the land. State v. Weyerhauser, 68 Minn. 353, 71 N. W. 265. However, with respect to the royalty tax, we said in Marble v. Oliver I. Min. Co. 172 Minn. 263, 265, 215 N. W. 71:

"The rule is that the procedure given for the imposition and enforcement of a tax is exclusive. City of Faribault v. Misener, 20 Minn. 347 (396) ; 37 Cyc. p. 1233. The tax being against a specified interest or estate in land is enforced *in rem*. McQuade v. Jaffray, 47 Minn. 326, 50 N. W. 233."

To the same effect is Midland G. & T. Co. v. Douglas County (C. C. A.) 217 F. 358. We must therefore look wholly to the statute, 1 Mason Minn. St. 1927, §§ 2392-1 to 2392-13, inclusive (L. 1923, p. 258, c. 226) for the enforcement of this tax.

Section 2392-8 reads:

"The situs of royalty for all purposes of this act shall be in this state; and the tax herein provided for shall be a specific lien from

the time the same is due and payable upon all and singular the right, title and interest of the person to whom such royalty is payable, in and to the land for permission to explore, mine, take out and remove ore on which the royalty is paid."

L. 1923, p. 258, c. 226, § 7, 1 Mason Minn. St. 1927, § 2392-7, as it was when the tax here involved accrued, read:

"Such tax shall be due and payable on the first day of June, 1924, and annually thereafter on the first day of June, and if not paid on or before that date a penalty of ten (10) per cent shall immediately accrue thereon."

It is thus clear that June 1, 1924, was the date when the tax by the statute was imposed as a lien, not on the land, but upon Edith Oliver Rea's interest therein. Prior to that time the tax is by the statute treated as a mere debt due from the recipient of the royalty to the state. At least, under Day v. Inland Steel Co. 185 Minn. 53, 239 N. W. 776, no step was taken to levy this tax until the amount was determined by the tax commission and its certificate filed. The draft is drawn by the state auditor upon the person receiving the royalty. The draft is by § 2392-9 made "prima facie evidence in any court where proceedings may be brought for its enforcement that the amount therein stated is due the state from the person against whom the same is drawn." When the tax is not collected, the attorney general, by § 2392-10, is required to bring suit upon the draft against the recipient of the royalty, and the judgment when "obtained and properly docketed shall be a lien upon all right, title and interest of the taxpayer to the land upon which such tax is a lien from the time the same is docketed," and the property shall be sold as on execution. As a general rule a tax is not a lien unless expressly made so by statute.

State v. Bellin, 79 Minn. 131, 133, 81 N. W. 763, 764, states that the purpose of the statute providing that on the first day of May the ordinary real estate taxes should become a lien "was to fix a particular date at which to determine the taxability, as well as the ownership and value, of property, for the purposes of assessment

and taxation. County of Martin v. Drake, 40 Minn. 137, 41 N. W. 942. * * * And it·was also designed to fix and fasten the lien itself, for such a lien does not arise by implication from the power to tax. It owes its inception, continued existence, and duration to the statute."

In Gould v. City of St. Paul, 120 Minn. 172, 177, 139 N. W. 293, 295, it was said of tax liens:

"Their duration, force or effect is controlled entirely by the statutes creating them."

And in State v. Security Nat. Bank, 139 Minn. 162, 172, 165 N. W. 1067, 1070, Judge Taylor states:

"A tax is not a lien upon property except as made so by statute."

By the statute above cited the lien against Edith Oliver Rea's interest in the land involved was created as of June 1, 1924, when the royalty tax received by her during the year 1923 became due and payable; but she had long before that, on December 19, 1923, conveyed all her interest in that land to defendant Henry O. Rea. On June 1, 1924, she had no interest in the land, which gave rise to the royalty, to which the tax could attach. The law cannot impute to the grantee of the royalty recipient notice or knowledge of the existence of the tax until the time that the statute makes it a lien on the land. Of course there was here a flaw in L. 1923, p. 258, c. 226, which left a loophole by which a recipient of royalty may prevent enforcement of the tax against the land by conveying it before the tax comes due. No doubt the intention was to enact a law so as to enforce collection of the tax upon every dollar of royalty received from ore lands under lease or permission from the owner to explore, mine, or remove ore; but the law is so worded that a case like the present one cannot be brought within its operation. It is a "casus omissus." Fortunately it is the only one that has come to our notice where the state has not collected its royalty tax from the recipient of the royalty or from the lessee who may have stipulated to pay it as·part consideration for the lease or permit under which exploring for or mining ore is done. In 1931 the legislature recognized the

defect or flaw in the law of 1923 by amending § 2392-8 so that the lien arises as the royalty accrues. L. 1931, p. 263, c. 234, Mason Minn. St. 1931 Supp. § 2392-8. Since then no case like the present could arise.

The following cases may be cited as supporting our conclusion that the judgment is erroneous as to appellants. State v. Western & Atlantic R. Co. 136 Ga. 619, 71 S. E. 1055; U. S. v. Pacific Railroad, 4 Dill. 71 (opinion by Mr. Justice Miller of the Supreme Court of the United States); Smietanka v. First T. & S. Bank, 257 U. S. 602, 42 S. Ct. 223, 66 L. ed. 391.

The judgment against appellants is reversed.

*STONE, Justice,* took no part.

